# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| BARBARA WILSON, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )  Case No. 4:22-cv-00415-SGC |
|  | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) |
|  | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Barbara Wilson, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB").  (Doc. 1).[2]  Wilson timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C § 405(g).  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

**I.     Procedural History**

Wilson completed the 12th grade but did not graduate high school because

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 12).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear as: Doc. __ at __.  Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear as: Tr. at __.

1

she failed the exit exam. (Tr. at 97-98). She then worked in restaurants and at a chicken plant. (*Id.* at 98-100). In her application for DIB, Wilson alleged she became disabled on May 17, 2019. (*Id.* at 252-53). After her claim was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 29). The ALJ denied Wilson's claim on April 22, 2021, after conducting a hearing and a supplemental hearing. (*Id.* at 29-39). Wilson was 51 years old when the ALJ issued the decision. (*Id.* at 32).

Wilson requested review of the ALJ's decision by the Appeals Council and submitted additional evidence for consideration. The Appeals Council declined to exhibit the evidence and denied review of the ALJ's decision. (*Id.* at 1-4). The decision then became the final decision of the Commissioner. *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Wilson thereafter commenced this action. (Doc. 1).

## II.  Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. §

404.1505(a).  An applicant for DIB must demonstrate disability between her alleged initial onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).  The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(i) and (b).  At the first step, the ALJ determined Wilson would meet the SSA's insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since May 17, 2019, the alleged onset date of her disability.  (Tr. at 32).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not

disabled. *Id.* at § 404.1520(a)(4)(ii) and (c).  At the second step, the ALJ determined Wilson has the following severe impairments: obesity, cervicalgia, cervical/lumbar radiculopathy, osteoarthritis, and hypertension.  (Tr. at 32).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d).  At the third step, the ALJ determined Wilson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (Tr. at 33).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. § 404.1520(e).  At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e).  If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Wilson has the RFC to perform a limited range of light work. (Tr. at 34). In terms of physical functioning, the ALJ determined Wilson could only occasionally stoop, crouch, or push or pull with her upper extremities and could never kneel or crawl. (*Id.*). At the fourth step, the ALJ determined Wilson cannot perform her past relevant work as a poultry eviscerator. (*Id.* at 37).

If the claimant is unable to perform her past relevant work, the Commissioner finally must determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Wilson's age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy, such as those of cafeteria attendant, cleaner, and parking lot attendant, that Wilson can perform. (Tr. at 38). The ALJ therefore concluded Wilson is not disabled. (*Id.* at 38-39).

### III.     Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to

6

apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

Wilson asserts two claims of error: (1) the ALJ erred by failing to incorporate into her RFC a limitation on her ability to turn her neck left and right and (2) the Appeals Council erred by declining to exhibit two pieces of additional evidence she submitted for consideration. (Doc. 17). [3]

### A. First Claim of Error

To support her first claim of error, Wilson points to her diagnoses of cervicalgia and cervical radiculopathy. (Doc. 17 at 19). But the fact of these impairments says nothing about the extent to which they limit Wilson's functioning or ability to work. *See Moore*, 405 F.3d at 1213 n.6 ("[T]he mere existence of

---

[3] Wilson begins the "Analysis" section of her brief by recounting the ALJ held a supplemental hearing without explaining why one was required and that the ALJ did not pose to the Vocational Expert ("VE") who testified at the supplemental hearing, as he posed to the VE who testified at the initial hearing, a hypothetical that included a limitation on an individual's ability to turn her neck left and right. (Doc. 17 at 15-18). (The VE at the initial hearing testified an individual who could turn her neck left and right only occasionally would not be able to perform Wilson's past relevant work; the jobs of cafeteria attendant, cleaner, or parking lot attendant; or any sedentary jobs. (Tr. at 103-06)). The court does not discern Wilson's brief to assert a claim of error in relation to the ALJ's decision to hold a supplemental hearing with a different VE to whom the ALJ posed different hypotheticals. The brief cites no authority that would support any such claim of error. The court reads the procedural history recounted by Wilson as a way of explaining why the incorporation into her RFC of a limitation on her ability to turn her head left or right matters: because, according to the VE who testified at the initial hearing, it would render her unable to work.

[certain impairments] does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard.").

Wilson also cites her testimony regarding her neck-related symptoms to support her first claim of error. (Doc. 17 at 18-19). She testified she experiences daily neck pain that "comes and goes." (Tr. at 93). When asked to describe the pain, she testified she "cannot move her neck around[;] . . . it jams up." (*Id.*). When she turns it to the right, "it feel[s] like it just pop[s]." (*Id.* at 102). When she turns it to the left, "it [doesn't] want to go way over there. It just stop[s]." (*Id.*).

The ALJ considered this testimony and discredited it (*id.* at 35), as he was permitted to do, *see Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 761 F. App'x 966, 968 (11th Cir. 2019) (noting ALJ may discredit claimant's testimony regarding subjective symptoms). He also clearly articulated explicit and adequate reasons for discrediting the testimony (Tr. at 35-37), as is required to support a negative credibility determination, *see Taylor*, 761 F. App'x at 968 (noting ALJ " 'must clearly articulate explicit and adequate reasons'" for discrediting claimant's subjective symptoms testimony) (quoting *Dyer*, 395 F.3d at 1210). Moreover, the stated reasons for discrediting the testimony are supported by substantial evidence, discussed below. *See id.* at 969 (noting reviewing court should " 'not disturb a clearly articulated credibility finding supported by substantial evidence'" (quoting *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014)).

The genesis of Wilson's neck pain was a motor vehicle accident on August 17, 2018. The vehicle Wilson was driving was rear-ended by another vehicle. (Tr. at 571). When Wilson presented at Regional Medical Center the next day, she had cervical midline tenderness but spontaneous range of motion. Imaging of her cervical spine revealed no acute fractures or significant malalignment. (*Id.* at 849-53). She sought treatment for neck and other pain at MedPlexMD Injury after the accident. (*Id.* at 571-89, 593-94). A January 2019 treatment record notes imaging showed mild-to-moderate disc bulging in the cervical spine, with some narrowing of the central and foraminal canals. (*Id.* at 572).

Wilson established care with Family Health and Wellness Center in May 2019. She did not complain of neck pain and had full range of motion in her neck, which was not tender on examination. (*Id.* at 859-61). The same was true when Wilson returned to the clinic in June 2019. (*Id.* at 857-58). Wilson reported to an orthopedic surgeon in June 2019 that steroid injections administered in January and February 2019 had provided her with "some reasonable pain relief" in relation to her neck. (*Id.* at 590). The surgeon advised Wilson that he would not recommend surgical intervention on her cervical spine and was supportive of Wilson's wish to pursue further conservative treatment. (*Id.* at 590-92).

Wilson had normal range of motion in her neck when she presented to Brookwood Baptist Health in September 2019. (*Id.* at 877, 879). A "Function

Report" completed by Wilson in October 2019 indicates she was independent in her activities of daily living and drove herself to and from church every Sunday, as well as on occasion to doctors' appointments. (*Id.* at 310-17). A consultative examination performed in December 2019 revealed Wilson had normal range of motion in her cervical spine. (*Id.* at 609-14).

Wilson only intermittently complained of neck pain during appointments at Calhoun Quality Health Care between January and May 2020. (*Id.* at 618-31, 794-818). She was diagnosed with cervical radiculopathy, but the recommended treatment was conservative: the application of cold or warm compresses and a referral for management with pain medication. (*See, e.g., id.* at 818). A July 2020 "Patient Plan" created by the clinic ordered Wilson to refrain from lifting, pushing, and pulling in relation to her cervical radiculopathy. (*Id.* at 887-88). Application of warm or cold compresses and abstention from lifting, pushing, and pulling remained the recommended treatment through November 2020. (*Id.* at 902-24, 927-943). Wilson was treated for cervicalgia and cervical radiculopathy by a chiropractor between September 2018 and March 2021. During this time her symptoms waxed and waned, but her prognosis improved from guarded to fair. (*Id.* at 634-791, 897-904, 955-1028).

The evidence discussed above is not entirely consistent with Wilson's testimony she experiences disabling neck pain and associated functional limitations.

It constitutes substantial evidence supporting the ALJ's decision to discredit the testimony and refrain from incorporating into Wilson's RFC a limitation on her ability to turn her neck left and right. *See, e.g., May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958 (11th Cir. 2007) (holding ALJ properly discredited plaintiff's subjective symptoms testimony where that testimony was not supported by clinical findings or consistent with objective medical evidence or reported daily activities); *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (holding ALJ properly discredited claimant's subjective symptoms testimony where that testimony was inconsistent with mostly normal findings by claimant's treating providers, claimant's reports to those providers, and conservative nature of recommended treatment).

### B. Second Claim of Error

A claimant generally may present additional evidence at each stage of the administrative process. 20 C.F.R. §§ 404.900(b), 404.970. The Appeals Council must consider "new, material, and chronologically relevant evidence" submitted by a claimant. *Id.* at § 404.970. Evidence is new if it is not merely cumulative of the evidence that was before the ALJ. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Evidence is material if there is a reasonable probability it would change the administrative result. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if it relates back to the time of the ALJ's decision.

11

*Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322 (11th Cir. 2015). Whether evidence is new, material, and chronologically relevant is a question of law subject to *de novo* review. *Id.* at 1321.

Wilson submitted several additional pieces of evidence to the Appeals Council, including (1) a report of imaging of her cervical spine performed in December 2018 and (2) a statement from her chiropractor dated September 6, 2019. (Tr. at 109, 110). The Appeals Council determined there was not a reasonable probability these pieces of evidence would change the outcome of the ALJ's decision and, therefore, declined to exhibit them. (*Id.* at 2).[4]

The imaging report documented mild-to-moderate disc bulging in the cervical spine, with some narrowing of the central and foraminal canals. (*Id.* at 110). It is clear this is the report noted in the January 2019 MedPlexMD Injury treatment record. The precise findings documented in the December 2018 report and the January 2019 treatment record are identical. (*Compare id.* at 110, *with id.* at 572).[5] The Appeals Council did not err in determining there was not a reasonable probability the evidence would change the ALJ's decision because the ALJ already had considered the substance of the evidence as presented in a different format.

---

[4] Wilson does not challenge the Appeals Council's decision not to exhibit other additional evidence she submitted.

[5] The court summarized the findings instead of reciting them verbatim.

The chiropractor's statement purported to summarize a consultation Wilson had not with the chiropractor but, rather, with an orthopedic surgeon in June 2019. (*Id.* at 109). The ALJ had the actual record of the consultation made by the orthopedic surgeon. (*Id.* at 590-92). The Appeals Council did not err in determining there was not a reasonable probability a chiropractor's purported summarization of an orthopedic surgeon's record, which record the ALJ already had in his possession, would change the ALJ's decision.

The chiropractor's statement also asserted the opinion it is not "safe or in [Wilson's] best interest" for Wilson to return to her job as a housekeeper or maintenance worker. (Id. at 109). An opinion as to whether a claimant is able to work is not a medical opinion, even if offered by a treating source, but rather a dispositive finding for the ALJ to make. 20 C.F.R. § 404.1527(d)(1); *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010). It is entitled to no special significance. 20 C.F.R. § 404.1527(d)(1) and (3); *Kelly*, 401 F. App'x at 407. The ALJ had the chiropractor's treatment records when he rendered his decision, and the ALJ did not err in determining there was not a reasonable probability the chiropractor's opinion on an issue reserved for the ALJ would change the decision.

The Appeals Council did not err in declining to exhibit the imaging report or chiropractor's statement.

## V. Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 8th day of September, 2023.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE